**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RYAN THOMPSON,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action, Case No.:** _____ |
| ) | |
| **McLANE FOODSERVICE, INC.,** ) | |
| ) | |
| *Defendant.* ) | |

**VERIFIED COMPLAINT FOR VIOLATIONS OF THE
FAMILY & MEDICAL LEAVE ACT
AND ILLINOIS WORKERS' COMPENSATION ACT**

**COMES NOW** Plaintiff Ryan Thompson (hereinafter, "Mr. Thompson" or "Plaintiff"), by and through counsel, and for his Complaint against McLane FoodService, Inc., (hereinafter, "Defendant") states and alleges as follows:

**<u>NATURE OF COMPLAINT</u>**

1. Mr. Thompson brings this action under federal law, specifically the Family & Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq.*

2. Plaintiff brings this action against Defendant McLane FoodService, Inc. for interference with the exercise of his rights under the FMLA, 29 U.S.C. § 2601 *et seq.*

3. Plaintiff brings this action against Defendant for retaliation against him for the exercise of his rights under the FMLA, 29 U.S.C. § 2601 *et seq.*

4. Plaintiff further brings this action against Defendant for retaliation against him for the exercise of his under the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 *et seq.*

5. Defendant's actions were in direct violation of the FMLA, 29 U.S.C. § 2601 *et seq*., and the IWCA, 820 ILCS 305/1 *et seq*.

6. For said violations, Plaintiff is seeking compensation for unpaid wages, including backpay, liquidated damages, compensatory damages, and attorney's fees.

## PARTIES

7. Plaintiff Ryan Thompson is an adult resident of Flossmoor, Cook County, Illinois.

8. Defendant McLane FoodService, Inc. is an incorporated company registered in the State of Illinois, with its principal place of business in Temple, Texas, and may be reached for service through its registered agent, C T Corporation System, 208 South Lasalle St., Suite 814, Chicago, Cook County, Illinois 60604-1101.

## JURISDICTION & VENUE

9. This Court has original federal jurisdiction pursuant to 28 U.S.C. § 1331 because this case is brought under the FMLA 29 U.S.C. § 2601 *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same controversy.

10. Defendant is an incorporated company registered in the State of Illinois, with its principal place of business in Texas, and is subject to service of process in Illinois. Therefore, this Court has personal jurisdiction over Defendant.

11. Defendant has its principal place of business in the Eastern Division of the Northern District of Illinois. Furthermore, a substantial part of the events giving rise to Mr. Thompson's claim occurred in the Eastern Division of the Northern District of Illinois. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in this district.

## FACTUAL BACKGROUND

2

12. Defendant McLane FoodService, Inc. is an incorporated company based in Temple, Texas, that buys, sells, delivers, and serves retail and restaurants with food equipment.

13. Defendant hired Mr. Thompson to work as a Level III Delivery Driver on September 13, 2021.

14. Shortly after being hired, in January 2022, Mr. Thompson sustained an on-the-job injury so severe it required him to take approximately seven months of leave.

15. Mr. Thompson notified Defendant that he had a doctor's appointment for this injury.

16. After visiting the doctor, the doctor immediately pulled Mr. Thompson off of the job for approximately five weeks.

17. Shortly after the accident, Mr. Thompson filed a claim for workers' compensation benefits with the Illinois Workers' Compensation Commission.

18. Once back at work after the leave from his 2022 injury, Mr. Thompson was given multiple and excessive random drug tests by Defendant, all of which he passed.

19. Outside of one drug test during his onboarding with the Company, Mr. Thompson had never been given a drug test prior to his injury while working for Defendant.

20. Upon information and belief, no other employees were given this excessive amount of random drug tests.

21. Despite not being injured through the entirety of 2023, Mr. Thompson received multiple disciplinary write-ups for incidents the Defendant deemed "preventable accidents".

22. None of these "preventable accidents" involved damage to any of the Defendant's facilities, equipment, or products, nor did these incidents result damage to any of the Defendant's customers' facilities or equipment.

23. The most recent of these purported accidents occurred on December 29, 2023, where

3

morning showers caused wet driving conditions and resulted in Mr. Thompson's truck getting stuck in some mud during a delivery.

24. The truck was extricated from the mud without sustaining any discernable damage.

25. Notably, during the majority of this period, Mr. Thompson's claim with the Illinois Workers' Compensation Commission remained in dispute; on October 27, 2023, the settlement for the claim was approved by the Commission.

26. On January 6, 2024, Mr. Thompson suffered a severe lumbar sprain while on the job.

27. Mr. Thompson immediately called his dispatcher at the Glenwood, IL terminal, Marion Curtis, to inform her that he would be unable to work the evening shift that day.

28. On January 7, 2024, Transportation Supervisor Robert Cook requested that Mr. Thompson run an extra route that evening and Mr. Thompson let him know that his back was still "messed up" and he was still unable to work.

29. Mr. Thompson promptly requested FMLA leave for his injury as he had done in the past for prior injuries.

30. The Defendant approved Mr. Thompson's FMLA request on January 11, 2024, with continuous leave beginning on January 12, 2024.

31. On the same day Defendant approved Mr. Thompson's FMLA request, January 11, 2024, Mr. Thompson received a phone call from Eric Feldman, a McLane Transportation Operations Manager, admonishing Mr. Thompson for his frequent "accidents".

32. During the phone call, Mr. Feldman informed Mr. Thompson that he could not be involved in any additional "accidents" until November 2024 or risk termination.

33. Mr. Feldman also stated that Mr. Thompson could not sustain any more injuries for the rest of his employment with the Defendant or risk termination.

4

34. On January 18, 2024, Transportation Supervisor Robert Cook called Mr. Thompson to inform him that he had been suspended, without giving a reason for said suspension.

35. The Defendant then terminated Mr. Thompson's employment on January 29, 2024.

36. In a letter dated January 31, 2024, Stephanie Kuhel, a Human Resources Generalist for the Defendant, outlined the Defendant's reasons for the termination.

37. The letter stated that Mr. Thompson had violated the Defendant's "safety policy" by having "three or more preventable accidents/injuries in the last year".

38. The letter was remarkable in that Mr. Feldman, Transportation Operations Manager, had already put Mr. Thompson on notice that he had reached his limit of accidents on January 11, 2024, but nothing further had happened since that date causing him to violate the "safety policy".

## COUNT 1 – VIOLATION OF THE FMLA – INTERFERENCE

39. Mr. Thompson realleges and incorporates all allegations as if actually set forth herein.

40. The FMLA defines an "employer" as an entity "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year." 29 U.S.C. § 2611(4)(A)(i).

41. At all relevant times, Defendant McLane FoodService, Inc. employed more than 50 people who delivered food service equipment to customers across the United States, thereby engaging in interstate commerce. Defendant also has employees working during the entire year exceeding the 20-calendar-workweek requirement. Defendant is therefore, a "covered employer" pursuant to the FMLA. *See* 29 U.S.C. § 2611(4)(A)(i).

5

42. The FMLA defines an "eligible employee" as an employee who has been employed for at least 12 months by the employer, worked at least 1,250 hours in the previous 12 months. 29 U.S.C. § 2611(2).

43. Mr. Thompson had worked as a full-time employee for Defendant for over two years prior to requesting leave in January 2024.

44. Mr. Thompson exceeded the 1,250-hours worked requirement in the 12 months prior to applying FMLA leave in January 2024; therefore, at all relevant times, Plaintiff was a "covered employee" for purposes of the FMLA.

45. Consequently, Mr. Thompson was always eligible to take FMLA leave for his own serious health conditions.

46. The FMLA entitles an eligible employee to twelve workweeks of unpaid leave within any twelve-month period to deal with "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

47. Mr. Thompson's lumbar sprain qualifies as a "serious health condition" under the FMLA.

48. The FMLA prohibits employers from interfering with, denying, or restraining an employee's exercise of or attempt to exercise their FMLA rights. *See* 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(a)(1).

49. Any FMLA-eligible employee who takes leave that is protected under the statute shall be entitled, on return from such leave, to be restored by the employer to their former position or an equivalent position with the same benefits, pay, and other terms and conditions of employment. *See* 29 U.S.C. § 2614(a); *see also* 29 C.F.R. § 825.214.

50. Accordingly, any FMLA-eligible employee who takes leave that is protected under the statute shall be entitled, on return from such leave, to be restored by the employer to their former

position or an equivalent position with the same benefits, pay, and other terms and conditions of employment. *See* U.S.C. § 2614(a); *see also* C.F.R. § 825.214.

51. After the incident causing the lumbar sprain on January 6, 2024, Mr. Thompson promptly requested FMLA leave as he had for past injuries.

52. On January 11, 2024, Defendant approved Mr. Thompson's FMLA request for continuous leave to begin on January 12, 2024; on the same day, Mr. Feldman, McLane Transportation Operations Manager, admonished Mr. Thompson for his frequent "accidents" and threatened to terminate him if he was involved in any other such accidents.

53. Days later, on January 18, 2024, Defendant suspended Mr. Thompson with no given reason.

54. On January 29, 2024, Defendant terminated Mr. Thompson's employment.

55. Notably, during the period between January 11, 2024 and January 29, 2024, Mr. Thompson was not involved in any accidents as he was on continuous FMLA leave during this period.

56. Defendant's decision to terminate Mr. Thompson while on FMLA leave constitutes interference with Mr. Thomspon's exercise of his FMLA rights.

57. Upon information and belief, no other employee who took FMLA leave was treated with equal scrutiny as Mr. Thompson.

### COUNT II – VIOLATION OF THE FMLA – RETALIATION

58. Mr. Thompson realleges and incorporates all allegations as if actually set forth herein.

59. The FMLA defines an "employer" as an entity "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year." 29 U.S.C. § 2611(4)(A)(i).

60. At all relevant times, Defendant McLane FoodService, Inc. employed more than 50 people who delivered food service equipment to customers across the United States, thereby engaging in interstate commerce. Defendant also has employees working during the entire year exceeding the 20-calendar-workweek requirement. Defendant is therefore, a "covered employer" pursuant to the FMLA. *See* 29 U.S.C. § 2611(4)(A)(i).

61. The FMLA defines an "eligible employee" as an employee who has been employed for at least 12 months by the employer, worked at least 1,250 hours in the previous 12 months. 29 U.S.C. § 2611(2).

62. Mr. Thompson had worked as a full-time employee for Defendant for over two years prior to requesting leave in January 2024.

63. Mr. Thompson exceeded the 1,250-hours worked requirement in the 12 months prior to applying FMLA leave in January 2024; therefore, at all relevant times, Plaintiff was a "covered employee" for purposes of the FMLA.

64. Consequently, Mr. Thompson was always eligible to take FMLA leave for his own serious health conditions.

65. The FMLA entitles an eligible employee to twelve workweeks of unpaid leave within any twelve-month period to deal with "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

66. Mr. Thompson's lumbar sprain qualifies as a "serious health condition" under the FMLA.

67. The FMLA prohibits employers from interfering with, denying, or restraining an employee's exercise of or attempt to exercise their FMLA rights. *See* 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(a)(1).

68. Any FMLA-eligible employee who takes leave that is protected under the statute shall be entitled, on return from such leave, to be restored by the employer to their former position or an equivalent position with the same benefits, pay, and other terms and conditions of employment. *See* 29 U.S.C. § 2614(a); *see also* 29 C.F.R. § 825.214.

69. Accordingly, any FMLA-eligible employee who takes leave that is protected under the statute shall be entitled, on return from such leave, to be restored by the employer to their former position or an equivalent position with the same benefits, pay, and other terms and conditions of employment. *See* U.S.C. § 2614(a); *see also* C.F.R. § 825.214.

70. Following the granted FMLA leave on January 11, 2024, Defendant suspended Mr. Thompson on January 18, 2024.

71. Additionally, Mr. Thompson was told that he could not be involved in any more "accidents" through November 2024 or sustain any more injuries during his entire career at McLane without risking termination.

72. Defendant retaliated against Mr. Thompson's exercise of his rights under the FMLA when they put him on suspension on January 18, 2024, and then terminating him on January 29, 2024, all while he was still on FMLA leave.

73. Defendant's retaliation against Mr. Thompson's exercise of his FMLA rights culminated in the ultimate termination of his employment with McLane.

74. The close proximity in time of Mr. Thompson's termination to his application for FMLA provides compelling evidence that Mr. Thompson's exercise of this FMLA rights was the real reason behind his discharge and the "safety violations" were mere pretext.

75. Moreover, Defendant acted in bad faith by willingly and knowingly violating Mr. Thompson's FMLA rights by disciplining him for taking FMLA leave, including putting him on

9

suspension while on the previously approved FMLA leave within a week.

**COUNT III – RETALIATION UNDER ILLINOIS WORKERS' COMPENSATION ACT**

76. Mr. Thompson realleges and incorporates all allegations as if actually set forth herein.

77. Under the Illinois Worker's Compensation Act, "[i]t shall be unlawful for any employer . . . to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h).

78. To make out a claim for retaliation in the workers' compensation context, the employee must show (1) that the employee was the Defendant's employee before his or her injury; (2) that the employee exercised a right granted by the Workers' Compensation Act; and (3) that the employee was discharged from his or her employment with a causal connection to his or her filing a workers' compensation claim. *Dotson v BRP US. Inc,* 520 F3d 703, 707 (7th Cir. 2008).

79. In January 2022, Mr. Thompson sustained an on-the-job injury so severe it required him to take approximately seven months of leave.

80. Mr. Thompson notified Defendant that he had a doctor's appointment for this injury.

81. After visiting the doctor, the doctor immediately pulled Mr. Thompson off of the job for approximately five weeks.

82. Shortly after the accident, Mr. Thompson filed a claim for workers' compensation benefits with the Illinois Workers' Compensation Commission.

83. Once back at work after the leave from his 2022 injury, Mr. Thompson was given multiple and excessive random drug tests by Defendant, all of which he passed.

84. Moreover, throughout 2023, Mr. Thompson received multiple disciplinary write-ups for

10

incidents the Defendant deemed "preventable accidents".

85. None of these "preventable accidents" involved damage to any of the Defendant's facilities, equipment, or products, nor did these incidents result damage to any of the Defendant's customers' facilities or equipment

86. On October 27, 2023, the settlement for the claim was approved by the Commission.

87. Soon thereafter, on January 18, 2024, Defendant suspended Mr. Thompson with no given reason.

88. Days later, on January 29, 2024, the Defendant then terminated Mr. Thompson's employment.

89. In attempting to justify its termination of Mr. Thompson, Defendant claimed that Mr. Thompson violated the Defendant's "safety policy" by having "three or more preventable accidents/injuries in the last year," despite Mr. Thompson not having any accidents since the warning by Mr. Feldman that he had reached his limits of accidents on January 11, 2024.

90. The temporal proximity, combined with the inconsistent nature of Defendant's justification for terminating Mr. Thompson, clearly establishes a causal connection between Mr. Thompson filing his claim for workers' compensation and his termination.

91. As such, Defendant violated the Illinois Workers' Compensation Act by unlawfully retaliating against Mr. Thompson for exercising his rights under the Act.

## PRAYER FOR RELIEF

**WHISEFORE**, Mr. Thompson prays as follows:

1. A declaratory judgment that the practices complained of herein were unlawful under the FMLA and IWCA.

11

2.   An award of money damages for unpaid wages, including back pay and liquidated damages in an amount to be determined at trial, compensatory damages, attorney's fees, and any and all such legal and equitable relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to a jury trial.

Dated: October 7, 2025                                 Respectfully submitted,

                                                                       *s/Alan G. Crone*
                                                                       Alan G. Crone, TN Bar No. 14285
                                                                       THE CRONE LAW FIRM, PLC
                                                                       88 Union Avenue, 13th Floor
                                                                       Memphis, TN 38103
                                                                       Telephone: (901) 737-7740
                                                                       Facsimile: (901) 474-7926
                                                                       Email: acrone@cronelawfirmplc.com

                                                                       *Attorney for Plaintiff*

## DECLARATION AND VERIFICATION

I, **Ryan Thompson**, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

**Ryan Thompson**

Date: 09 / 11 / 2025

13

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | FMLA Complaint - Ryan Thompson |
| **File name** | 2025.09.11_R._Tho...LA_Complaint.docx |
| **Document ID** | 765f34036c088829a819d4170fab720e3ddf5875 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **09 / 11 / 2025** 17:03:48 UTC-5 | Sent for signature to Ryan Thompson (rt07668@gmail.com) from jlc@cronelawfirmplc.com IP: 173.166.195.225 |
| **VIEWED** | **09 / 11 / 2025** 17:14:14 UTC-5 | Viewed by Ryan Thompson (rt07668@gmail.com) IP: 172.58.166.99 |
| **SIGNED** | **09 / 11 / 2025** 17:14:28 UTC-5 | Signed by Ryan Thompson (rt07668@gmail.com) IP: 172.58.166.99 |
| **COMPLETED** | **09 / 11 / 2025** 17:14:28 UTC-5 | The document has been completed. |